UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANTHONY P. CASSATA,

                              Plaintiff,

                                                    DECISION AND ORDER

-vs-
                                                    14-CV-6236 CJS

PATRICIA LECONEY, BRIAN MCAULIFFE,
JOHN DOE, PATRICIA RECOR, R. MESSINGER,
WAYNE POTH, CHARLES WILLIAMS and
WILLIAM M. DENNINGER,

                              Defendants.


_____

INTRODUCTION

        This is an action under 42 U.S.C. § 1983 brought by Anthony Cassata ("Plaintiff"),

a former prison inmate, who maintains that the defendants, who were employed by either

the New York State Court System or the New York State Department of Corrections and

Community Supervision ("DOCCS"), caused him to serve a term of imprisonment that

exceeded the term to which he was actually sentenced.   Now before the Court is

Defendants' motion (Docket No. [#5]) to dismiss the Complaint.  The application is granted,

but the Court will permit Plaintiff to file an amended complaint.

BACKGROUND

        The following facts are taken from the Complaint in this action, including the

attached exhibits, as well as public records and documents that Plaintiff possessed and

relied upon in bringing this action.[1]

_____

[1]It is of course well-settled that in resolving a 12(b)(6) motion, the Court is limited as to what it
can consider. *See, Vasquez v. City of New York*, No. 10 Civ. 6277(LBS), 2012 WL 4377774 at *1
(S.D.N.Y. Sep.24, 2012). (On a 12(b)(6) motion, "a court may consider 'documents attached to the

Prior to 2008, Plaintiff had at least two felony convictions in New York State, including a conviction in 2004, in Broome County, New York,  for Grand Larceny, for which he received a sentence of two-to-four years.[2] According to DOCCS's website, as well as to submissions by the parties in this action, in August 2006 Plaintiff was released on parole.[3]

Shortly thereafter, while still on parole, on October 18, 2006, Plaintiff was charged with committing various new crimes in Livingston County, New York, including Forgery in the Second Degree and Criminal Impersonation in the Second Degree.[4]

Apparently, though, Plaintiff remained out of custody, because in May 2008, he was charged with committing additional felonies in Steuben County, New York.  Specifically, on May 23, 2008, Plaintiff was charged in Steuben County with Grand Larceny in the Fourth Degree (Auto) and Forgery in the Second Degree.[5]

Shortly thereafter, on May 28, 2008, Plaintiff was charged in Monroe County, New York, with crimes including Reckless Endangerment in the First Degree, Grand Larceny in the Third Degree and Grand Larceny in the Fourth Degree (Auto).[6]

Consequently, it appears that as of May, 2008, Plaintiff had pending felony charges

---

complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.' " *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (*quoting Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993)).").

[2]Plaintiff also has a 1997 conviction for Grand Larceny (Auto) in Monroe County, New York.

[3]See, Docket No. [#10], Ex. 6 (Parole Revocation Decision Notice).

[4]See, Docket No. [#10], Ex. 3.

[5]See, Docket No. [#10] at p. 14.

[6]See, Docket No. [#10] at p. 12.

2

in Livingston County, Steuben County and Monroe County, as well as parole violations relating to his earlier Broome County sentence.

On June 20, 2008, an Administrative Law Judge for the New York State Division of Parole determined that Plaintiff had violated the terms of his parole, and ordered that he be returned to prison until August 26, 2008, which apparently was the maximum expiration of his Broome County sentence.[7]  The copy of the parole revocation decision that was submitted to the Court is not entirely legible, but Plaintiff seems to suggest that the basis for his parole revocation was the crimes that he committed in Livingston County in October 2006.  As will be discussed further below, this connection between Plaintiff's parole violation and his charges in Livingston County seems to have resulted in confusion at a later sentencing.

Plaintiff pled guilty to the Livingston County charges, and on January 27, 2009, the New York State Supreme Court, Livingston County, the Honorable Robert B. Wiggins, presiding, sentenced Plaintiff to a term of imprisonment of three-to-six years.[8]

Plaintiff also pled guilty in Monroe County, and on May 8, 2009, the New York State Supreme Court, Monroe County, the Honorable David D. Egan, presiding, sentenced Plaintiff principally to a term of imprisonment of two-to-four years, to run concurrently with the Livingston County sentence.[9]

Plaintiff also pled guilty in Steuben County, and it is that court proceeding from which this lawsuit arises.  Specifically, on June 3, 2009, Plaintiff pled guilty, to Grand

---

[7]See, Docket No. [#10], Ex. 6 (Parole Revocation Decision Notice).

[8]See, Docket No. [#10], Ex. 3.

[9]See, Docket No. [#10], Ex. 4.

3

Larceny in the Fourth Degree (Auto) in Steuben County Court before the Honorable Joseph W. Latham ("Judge Latham").   At that time, defendant William Denninger ("Denninger") was the Clerk of the Court and defendant Charles Williams ("Williams") was Judge Latham's Court Assistant.  Plaintiff pled guilty pursuant to a written plea agreement, which, in pertinent part, included this statement:  "As a result of this plea, I will receive a sentence (*to run consecutive with any unexpired sentence relating to my existing parole*) of an indeterminate  term of incarceration, the maximum being 3 years and the minimum being 11/2 years." (emphasis added).

However, the transcript of the plea and sentence indicates that there was some confusion about the sentence as between Judge Latham, the prosecution and the defense.[10]  Specifically, the prosecutor indicated that the sentence was "to be consecutive to Livingston County Indictment 2008-66," which was the indictment on which Plaintiff had been sentenced in Livingston County on January 27, 2009,[11] but the defense disagreed. After further discussion off the record, Plaintiff represented that he was "off parole," and that, therefore, the "consecutive" provision in the plea agreement was essentially meaningless.[12]  Judge Latham and the prosecution agreed that the "consecutive" provision in the plea agreement would have no effect if Plaintiff in fact owed no additional "parole" time.  Such was the discussion in court prior to Judge Latham actually imposing a sentence upon Plaintiff.

Significantly, though, when Judge Latham imposed his sentence later during that

---

[10]See, Docket No. [#5-1], Ex. B.

[11]See, Docket No. [#5-1], Ex. B, transcript p. 2.

[12]See, Docket No. [#5-1], Ex. B, transcript p. 4.

proceeding, he stated as follows, in pertinent part:

> The prison sentence [that I am imposing] *is consecutive to any unexpired term that you owe in relation to a previous Livingston County conviction*, but this is concurrent with any Monroe County conviction that was imposed recently in Monroe.

(emphasis added).[13]  Thus, although the plea agreement referred to the Steuben County sentence running consecutively with "any unexpired sentence relating to [Plaintiff's] existing parole," the sentence that Judge Latham imposed made the Steuben County sentence run consecutively with any unexpired sentence from Livingston County.  Consistent with that sentence, defendant Williams apparently prepared a Uniform Sentence & Commitment form, indicating that Plaintiff's sentence was to run "consecutively to 2008-66 Livingston Co.,"[14] which refers to the Livingston County indictment upon which Plaintiff had been sentenced in January 2009.

Some time later, Plaintiff filed a motion before Judge Latham pursuant to New York Criminal Procedure Law § 440, seeking a clarification and modification of his sentence. On September 26, 2012, Judge Latham issued an Order that states, in pertinent part:

> [T]he <u>sentence</u> *imposed by this Court on June 3, 2009 . . . is clarified and modified* to reflect that Defendant's sentence as a Second Felony Offender to an indeterminate term with a minimum of one and one half (1 ½) years and a maximum of three (3) years imprisonment in a New York State Correctional Facility shall be served concurrently with the terms of imprisonment imposed on the Defendant by Monroe County on May 8, 2009 (Superior Court Case No. 2009-0046) and Livingston County on January 27, 2009 (Superior Court case #2008-066); and it is further ordered that an Amended Sentence and Commitment Form shall be filed with New York

---

[13]See, Docket No. [#5-1], Ex. B, transcript p. 9.

[14]See, Docket No. [#5-1], Ex. C.

State immediately[.]

(emphasis added).[15] This Order by Judge Latham is significant, in the Court's view, because it indicates that it is the actual sentence that is being clarified and modified, as opposed to the Sentence and Commitment form. In other words, the error, if any, was not in the Sentence and Commitment form, but rather, was in the sentence itself.

On May 8, 2014, Plaintiff commenced this action. The operative Complaint [#3] in this action purports to assert constitutional claims against Williams and Denninger, blaming them for the fact that the Steuben County Sentence and Commitment form stated that the Steuben County sentence was to run consecutively to the Livingston County sentence. The Complaint also purports to assert claims against Patricia LeConey ("LeConey"), the Superintendent of Cape Vincent Correctional Facility ("Cape Vincent"), "John Doe" ("Doe"), the Inmate Records Coordinator at Cape Vincent, Brian McAuliffe ("McAuliffe"), the Deputy Superintendent of Security at Cape Vincent, Patricia Recor ("Recor"), a Corrections Counselor at Cape Vincent, and R. Messinger ("Messinger"), a Senior Parole Officer employed by DOCCS. With regard to those claims, Plaintiff indicates that he was incarcerated at Cape Vincent, and he seems to indicate that LeConey, Doe, McAuliffe, Recor and Messinger had something to do with him being incarcerated longer than he should have been. Plaintiff alleges, in that regard, that on October 1, 2010, Recor informed him that she had removed his name from the waiting lists for the Alcohol and Substance Abuse Treatment ("ASAT") and Aggression Replacement Training ("ART") prison programs, for medical reasons, and that such removal would not adversely impact

---

[15]See, Docket No. [#10], Ex. 2.

Plaintiff.[16] Plaintiff contends, though, that several years later unnamed "prison officials" told him that he was not eligible for "good time" credit toward his sentence, because he had "refus[ed] to participate in the ASAT program."[17] Plaintiff apparently denies that he refused to participate in such programming, and contends that the DOCCS defendants' actions resulted in him being ineligible for parole.

On July 10, 2014, Defendants filed the subject motion [#5] to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6).  Generally, Defendants maintain that the original Steuben County Uniform Sentence & Commitment form accurately reflected Judge Latham's sentence, and that Plaintiff's contentions to the contrary are frivolous.  Further, Defendants maintain that the complaint fails to plead that any defendant violated Plaintiff's right to be free from cruel and unusual punishment.  Defendants further contend that the pleading fails to state a due process claim, since Plaintiff had no protected liberty interest in being granted parole.  Defendants also maintain that the pleading fails to state claims for equal protection or negligence.  Lastly, Defendants maintain that they are entitled to quasi-judicial immunity.

On August 14, 2014, Plaintiff filed papers in opposition to the motion to dismiss, in which he reiterates his claim that he was imprisoned longer than he should have been, due both to a clerical error and to the fact that officials at Cape Vincent improperly denied him good-time credit.  However, the majority of Plaintiff's response pertains to new allegations that appear nowhere in the original Complaint.  In that regard, Plaintiff contends that while he was at Cape Vincent, he had a medical condition that prevented him from working, but

---

[16]This is the only allegation concerning Recor, and although Defendants have not raised this point, it appears that such action falls well outside Section 1983's three-year statute of limitations.

[17] Complaint [#3] at ¶ ¶ 29- 31.

that officials at Cape Vincent nevertheless forced him to perform automotive mechanical work "non stop" on their personal vehicles.  Plaintiff further contends that officials at Cape Vincent forced him to perform other work, such as snow plowing, so often that he was permitted to sleep only "2-3 hours per night."[18]  Plaintiff also requests permission to amend the pleadings.  In that regard, Plaintiff's counsel suggests that the initial pleading was incomplete, because it was difficult for her to communicate with Plaintiff because he was *on parole* at the time, though it is unclear to the Court why being on parole would have prevented Plaintiff from communicating with his attorney.[19]

On December 4, 2014, counsel for the parties appeared before the undersigned for oral argument.

DISCUSSION

<u>Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6)</u>

The general legal principles concerning motions under FRCP 12(b)(6) are well settled:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

---

[18]See, Docket No. [#10-1] at ¶ 10.

[19]See, Ryan Decl. [#10] at ¶ 3.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929

(2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.

2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim

rests through factual allegations sufficient 'to raise a right to relief above the speculative

level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working

principles":

> First, although a court must accept as true all of the allegations contained in
> a complaint,[20] that tenet is inapplicable to legal conclusions, and threadbare
> recitals of the elements of a cause of action, supported by mere conclusory
> statements, do not suffice.  Second, only a complaint that states a plausible
> claim for relief survives a motion to dismiss, and determining whether a
> complaint states a plausible claim for relief will be a context-specific task that
> requires the reviewing court to draw on its judicial experience and common
> sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks

omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not shown—that the

pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950

(2009) (citation omitted).  "The application of this 'plausibility' standard to particular cases

is 'context-specific,' and requires assessing the allegations of the complaint as a whole."

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v.

Morgan Stanley Inv. Management Inc.*,  712 F.3d 705, 719 (2d Cir. 2013) (citation and

---

[20]The Court must accept the allegations contained in the complaint as true and draw all
reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d
Cir.1999), *cert. den.* 531 U.S. 1052, 121 S.Ct. 657 (2000).

internal quotation marks omitted).

<u>Section 1983 Liability</u>

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles generally

applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
>
> ***
>
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir.

2004).[21]

<u>The Steuben County Defendants</u>

Plaintiff commenced this action on May 8, 2014, and although Defendants did not

---

[21]Following the Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009), there is some disagreement among district courts in this Circuit as to whether all of the foregoing "*Colon* factors" still apply. *See, e.g., Dilworth v. Goldberg*, 2011 WL 3501869 at * 17 (S.D.N.Y. Jul. 28, 2011) ("*Iqbal* has caused some courts to question whether all five of the personal involvement categories survive that decision.") (collecting cases). It is unclear whether *Iqbal* overrules or limits *Colon*, therefore, in the absence of contrary direction from the Second Circuit, the Court will continue to apply those factors. *See, Platt v, Incorporated Village of Southampton*, 391 Fed.Appx. 62, citing *Back v. Hastings on Hudson Union Free Sch. Dist.*, which sets forth all five of the *Colon* bases for imposing supervisory liability.

raise this point in their motion to dismiss, it appears that the claims against Williams and Deninger, which purportedly arose on June 3, 2009, are time-barred under § 1983's three-year statute of limitations.

In any event, the claims against Williams and Deninger lack merit.  In that regard, the Complaint contends that Williams and Denninger violated Plaintiff's rights because "[t]he Uniform Sentence and Commitment sheet for Steuben County should have stated that the Steuben County Sentence would run concurrently to [the] Monroe and Livingston County sentences."[22] That is, Plaintiff contends that Williams and Denninger transcribed his sentence incorrectly, which resulted in him serving a longer sentence than that which Judge Latham imposed.  However, at the outset, the pleading only alleges personal involvement by Williams, who supposedly was "responsible for recording the Judge's sentencing of the Plaintiff on the Uniform Sentence & Commitment which was then transmitted to DOCCS."[23]  The pleading does not allege personal involvement by Denninger, but, instead, indicates only that Denninger held the position of Court Clerk.[24] Consequently, the pleading fails to state a claim against Denninger.

As for Williams, the pleading similarly fails to state a claim, since it does not plausibly allege that Williams was at fault for writing that the Steuben County sentence was to run consecutively to the Livingston County sentence.  Rather, as discussed above, Judge Latham in fact stated, as part of his sentence, that the Steuben County sentence was to run consecutively to the Livingston County sentence:

---

[22]Complaint [#3] at par. 25.

[23]Complaint [#3] at par. 21.

[24]Complaint [#3] at par. 22.

*The prison sentence is consecutive to any unexpired term that you owe in relation to a previous Livingston County Conviction*, but this is concurrent with any Monroe County conviction that was imposed recently in Monroe.[25]

(Emphasis added).  Whether or not that is what Judge Latham intended to say, that is in fact what he said, according to the transcript.  Moreover, when Judge Latham imposed that sentence on June 3, 2009, Plaintiff did owe  an unexpired term of imprisonment stemming from his sentencing in Livingston County on January 27, 2009.  Accordingly, Williams did not misstate Plaintiff's sentence when he completed the Uniform Sentence & Commitment form.  Moreover, since  Williams was acting in his capacity as a judicial employee when he drafted the Uniform Sentence & Commitment form according to Judge Latham's sentence, he is entitled to quasi-judicial immunity from liability. *McKnight v. Middleton*, 699 F.Supp.2d 507, 525 (E.D.N.Y. 2010) ("[A] clerk's acts that implement judicial decisions or that are performed at the direction or under the supervision of a judicial officer come under the ambit of judicial immunity."),*affirmed*, 434 Fed.Appx. 32 (2nd Cir.Oct 05, 2011).

For all of the foregoing reasons, the pleading fails to state claims against Williams and Denninger, and the claims against them are dismissed.

## *The DOCCS Defendants*

The DOCCS defendants (LeConey, Doe, McAuliffe, Recor, Messinger and Poth) maintain that the Complaint fails to allege that any of them were personally involved in the alleged constitutional violations.   The Court agrees.   The allegations against these defendants consist of nothing more than conclusory statements about "DOCCS officials."  The pleading does not allege any particular acts of wrongdoing by these defendants.  At

---

[25]Docket No. [#5-1] at p. 18, sentencing transcript at p. 9.

most, the pleading indicates that almost four years prior to the commencement of this lawsuit, Recor removed Plaintiff's name  from the ASAT and ART waiting lists for medical reasons, but such allegation does not state a constitutional claim.  Accordingly, the claims against LeConey, Doe, McAuliffe, Recor, Messinger and Poth are dismissed.

### *Plaintiff's Request for Leave to Amend*

Plaintiff has requested leave to amend, and Courts must freely grant such leave "when justice so requires." FRCP 15(a)(2). Nevertheless, a "district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir.2009) (internal quotation marks omitted). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Martin v. Dickson*, 100 Fed.Appx. 14, 16 (2d Cir.2004) (unpublished).

For the reasons discussed above, the Court finds that any amendment of the claims against Williams and Denninger would be futile, and leave to amend is therefore denied as to them.   However, at this stage of the litigation the Court cannot say that amendment as to the DOCCS defendants would be futile.   Accordingly, Plaintiff is granted leave to amend as to the DOCCS defendants.

## CONCLUSION

Defendants' application to dismiss [#5] is granted.  The claims against Williams and Denninger are dismissed with prejudice, and the Clerk of the Court is directed to terminate them as defendants.  The remaining claims are dismissed without prejudice, and Plaintiff's request for leave to amend is granted.  Plaintiff shall file and serve any amended complaint within thirty (30) days of the date of this Decision and Order.  Plaintiff is reminded that any

such amended complaint will completely replace the prior complaint in this action. Defendants shall have twenty (20) days after filing of the amended complaint to file and serve answers or to otherwise move against the pleading.

So Ordered.


Dated: Rochester, New York
          December 11, 2014

                              ENTER:


                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge